IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUILLENS STEVENS,** : <br>     **Plaintiff,** : <br> : <br> v. : <br> : <br> **PHILLY LIV BACON LLC,** *et al.*, : <br>     **Defendants.** : | **CIVIL ACTION NO. 24-CV-2467** |

<u>MEMORANDUM</u>

**SCHMEHL, J. /s/ JLS**                                                                             **APRIL 11, 2025**

    *Pro se* Plaintiff Quillens Stevens commenced this civil action against Defendants Philly Liv Bacon LLC, d/b/a Wendy's and Yellow Cab Holdings LLC, d/b/a Wendy's (collectively referred to as "Wendy's"), alleging employment discrimination and retaliation. Currently before the Court are: (1) Defendants' Motion to Dismiss the Amended Complaint (ECF No. 17) (the "Motion"); (2) Stevens's response in opposition (ECF No. 19); and (3) Defendants' reply (ECF No. 20). As set forth more fully below, the Motion will be granted in part and denied in part.

**I.    PROCEDURAL HISTORY**

    Stevens initiated this civil action by filing a Complaint on June 5, 2024, alleging that he was discriminated and retaliated against by his employer, Philly Liv Bacon LLC, d/b/a Wendy's.[1] (*See* ECF No. 2.) Specifically, Stevens asserted claims of discrimination and retaliation pursuant to: (1) Title VII of the Civil Rights Act, which prohibits employment discrimination based on race, color, gender/sex, religion, and national origin; (2) the Americans with Disabilities Act

---

[1]     Stevens also named Yellow Cab Holdings LLC ("YCH") as a Defendant, identifying it as the parent company of Wendy's. (*See* ECF No. 2.)

("ADA"), which prohibits employment discrimination based on an employee's disability or perceived disability; and (3) the Family Medical Leave Act ("FMLA"). (*See* ECF No. 2 at 1-3.)

By Memorandum and Order dated July 23, 2024, the Court granted Stevens leave to proceed *in forma pauperis* and dismissed his Complaint without prejudice. *See Stevens v. Philly Liv Bacon LLC*, No. 24-2467, 2024 WL 3511411, at *1 (E.D. Pa. July 23, 2024). The Court determined that Stevens's allegations were insufficient to state a plausible discrimination or retaliation under Title VII. *Id.* at 3. Stevens did not, *inter alia*, allege his membership in any protected class under Title VII, nor did he allege that he had engaged in activity protected by Title VII. *Id.* The Court also determined that Stevens did not allege any facts to suggest that he suffered from a disability or was regarded as having a disability within the meaning of the ADA such that he could plausibly infer that his demotion at work was motivated by his disability or a perceived disability. *Id.* at 4. Finally, Stevens's claims of interference and retaliation under the FMLA were dismissed because he failed to allege any facts to support an inference that he was an eligible employee who was entitled to FMLA leave. *Id.* Stevens's state law claims were dismissed for lack of subject-matter jurisdiction. *Id.* at 5.

On August 22, 2024, Stevens filed an Amended Complaint ("AC"), again naming Philly Liv Bacon LLC, d/b/a Wendy's and Yellow Cab Holdings LLC, d/b/a Wendy's as Defendants. (ECF No. 9.) Defendants filed the pending Motion to dismiss on October 24, 2024, and Stevens was directed to file a response thereto. (ECF Nos. 17, 18.) Defendants seek dismissal of Stevens's AC in its entirety.[2] Specifically, Defendants claim that Stevens does not allege facts sufficient to

---

[2] Defendants argue initially that the AC should be dismissed because it does not allege the specific name of Stevens's former employer, noting that Stevens only avers that he was employed as a General Manager "at the Restaurant." (Response at 3-4.) Defendants contend that they cannot be "held liable for any alleged adverse action . . . when neither Defendant is alleged to be [Stevens]'s employer." (*Id.* at 4.) However, the Court notes that Stevens asserts that he was

establish that he suffered from an ADA-covered disability and that he fails to adequately plead retaliation in violation of the ADA or Title VII. With respect to his FMLA claims, Defendants claim that Stevens is not an eligible employee. Finally, Defendants claim that Stevens's claim for intentional infliction of emotional distress is barred by Pennsylvania's Workers Compensation Act. Stevens filed his Response to Defendants' Motion on November 14, 2024 (ECF No. 19), and Defendants filed a reply thereto on November 26, 2024 (ECF No. 20). Defendants' Motion to dismiss is ripe for review.

## II.   FACTUAL ALLEGATIONS[3]

Stevens avers that he was employed as the General Manager at the Wendy's located in Whitehall, Pennsylvania from April 25, 2022, through April 25, 2023.[4] (*See* AC at 2.) On March 29, 2023, Stevens experienced "a severe medical event, a mild heart attack/stroke due to elevated blood pressure" that required "immediate hospitalization." (*Id.*) He claims that he immediately informed his supervisor, James Miller, of the hospitalization and requested information regarding medical leave.[5] (*Id.*) Stevens contends that his "condition substantially limited the major life

---

employed "at the Wendy's located at 2545 Mickley Avenue, Whitehall, Pennsylvania." (AC at 2.) Stevens also avers that both Defendants are doing business as Wendy's. (*Id.* at 1.) The Court is not persuaded by Defendants' argument, especially considering Stevens's status as a *pro se* litigant.

[3]    The factual allegations set forth in this Memorandum are taken from Stevens's Amended Complaint (ECF No. 9). The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[4]    Stevens asserts that YCH establishes and enforces employment policies across all of its YCH Wendy's franchises, including the Whitehall location where he was employed. (AC at 2.)

[5]    Stevens claims that Miller "exhibited a dismissive and uncooperative attitude, focusing primarily on securing coverage for the store rather than addressing [Stevens's] medical needs and legal rights." (AC at 3

3

activities of working and caring for oneself." (*Id.*) On March 30, 2023, Miller sent a text message to Stevens requesting that he provide a doctor's note. (*Id.*)

On April 3, 2023, Stevens provided a "medical certification from his treating physician, Dr. Ihab Abdelaal, documenting the qualifying medical condition and the necessary period of leave." (*Id.*) On April 11, 2023, Stevens communicated his "return to work plans" to Elena Kurza, Defendants' Vice President of Operations. (*Id.*) On April 14, 2023, Stevens was allegedly informed by Kurza that his "General Manager position was no longer available." (*Id.*) Stevens avers that he was offered the "lesser position" of Assistant Manager, at a "significantly lower pay rate, without any explanation of justification."[6] (*Id.* at 3.) He avers that "no legitimate, non-discriminatory reason" was provided for his demotion. (*Id.*)

Stevens also avers that prior to his hospitalization, Miller "engaged in a pattern of retaliatory conduct," by reducing Stevens's work hours, assigning undesirable job tasks, and withholding opportunities for training and advancement. (*Id.*) Miller also allegedly made defamatory and derogatory comments about Stevens's performance in front of his subordinates and isolated Stevens from team meetings and decision-making processes. (*Id.*) Stevens claims that "[t]his series of retaliatory actions created a hostile work environment" and contributed to Stevens's "declining mental health and eventual hospitalization." (*Id.*) Stevens also avers that after he "filed a complaint," Miller "intensified [his] retaliatory behavior" by "increasing the frequency of visits from management or supervisors." (*Id.*)

Stevens contends that he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue Letter on April 2, 2024.

---

[6] Stevens avers that the Assistant Manager position resulted in an income reduction of approximately $20,000 per year. (AC at 3.)

4

(*Id.*)  He asserts claims of retaliation in violation of Title VII,[7] discrimination and retaliation in violation of the ADA, and claims of interference and retaliation in violation of the FMLA.  (*Id.* at 3-5.)  Stevens also asserts intentional infliction of emotional distress.  (*Id.* at 5.)  He seeks injunctive relief, lost wages and benefits, and monetary damages.  (*Id.* at 6.)

### III. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555.)  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const.*

---

[7] In the AC, Stevens asserts "unlawful employment discrimination and retaliation" in violation of Title VII.  (AC at 3.)  However, in his Response to the Motion, Stevens clarifies that he is only "seeking remedy for violations of Title VII of the Civil Rights Act for retaliation." (Response at 3.)  As to any claims of unlawful discrimination, Stevens has not alleged his membership in any protected class under Title VII, let alone provided sufficient facts to raise an inference that his demotion was related to his membership in that class.  *See Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246, 249 (3d Cir. 2012) (*per curiam*) (explaining that "[t]he discrimination must be 'because of' the employee's protected status or activity" (quoting *Andreoli v. Gates*, 482 F.3d 641, 644 (3d Cir. 2007)); *Shahin v. Del. Dep't of Transp.*, 405 F. App'x 587, 588-89 (3d Cir. 2010) (*per curiam*) (affirming dismissal of complaint where plaintiff failed to provide "details on what position she applied for, how she was qualified for the position, and what protected classes she belongs to").

*Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted). To state an employment discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and ask only whether that complaint, liberally construed contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

### IV.    DISCUSSION

#### A.    ADA Discrimination Claim

Discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). To

state a plausible discrimination claim under the ADA a plaintiff must allege: (1) that he is disabled within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) he suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted). To state a claim for a failure to accommodate under the ADA, a plaintiff must allege sufficient facts to support a reasonable inference that: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). A plaintiff is disabled for purposes of the ADA if he (1) has a "physical or mental impairment that substantially limits one or more" of his "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102(1)). The parties dispute whether Stevens has adequately pled that he is disabled within the meaning of the ADA and, if so, whether he has alleged a plausible basis for a claim.[8]

Stevens must allege that he has "a physical or mental impairment that substantially limits one or more major life activities."[9] 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but

---

[8] The AC's allegations about Stevens's work history support an inference that he was otherwise qualified for his job with Wendy's (*see* AC at 2), and his demotion is a sufficient adverse action for purposes of an ADA claim as detailed below. The parties do not appear to dispute these elements at this stage of the case. Rather, they dispute whether Stevens has adequately pled a disability under the statute and whether he plausibly alleged a basis for inferring discrimination based on that disability.

[9] Stevens contends in conclusory fashion that Wendy's regarded him as having a disability, "as evidenced by the employer's insistence that [he] cover his shift despite his hospitalization and subsequent medical leave." (AC at 4.) "A plaintiff states a 'regarded as' claim if s/he 'establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or

are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A).  The 2008 ADA Amendments Act clarified that the definition of disability and "substantially limits" should be construed "in favor of broad coverage of individuals . . . to the maximum extent permitted."  42 U.S.C. § 12102(4)(A)-(B). However, "to sufficiently allege that an impairment interferes with a major life activity, a plaintiff must elaborate on whether the alleged impairment interfered with his alleged major life activity during the period of alleged discrimination by Defendants," and "the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F.Supp.3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, 22-2505, 2023 WL 8708417 (2d Cir. Dec. 18, 2023).

Taking the allegations in the AC as true and drawing all reasonable inferences in his favor, the Court concludes that Stevens has not adequately alleged that he is disabled.  Stevens avers in conclusory fashion that his mild heart attack/stroke "substantially limited the major life activities of working and caring for oneself." (AC at 2, 3.)  However, Stevens has not detailed the frequency,

---

perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.'" *Eshelman*, 961 F.3d at 245 (quoting 42 U.S.C. § 12102(3)) (alterations in original and emphasis added); *see also Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) ("The test [for a "regarded as" claim] is whether the employer perceived [the employee] as impaired, whether or not the perceived impairment limits or is perceived to limit a major life activity." (quotations and alteration omitted)).  "An employer regards a person as disabled when it misinterprets information about an employee's limitations to conclude that the employee is incapable of performing his or her job requirements." *Eshelman*, 961 F.3d at 245 (quotations and alteration omitted).  Stevens's conclusory assertion that Wendy's insisted on him covering his shift does not support a "regarded as" claim.  On the contrary, by insisting that Stevens cover his shift, it can be inferred that Wendy's believed him to be capable of performing his job requirements.  As such, Stevens has not plausibly stated a "regarded as" claim under the ADA.

8

duration, or severity of his alleged limitations. *See Sally-Harriet v. N. Child. Servs.*, No. 17-4695, 2019 WL 1384275, at *5 (E.D. Pa. Mar. 26, 2019) (plaintiff's complaint did not include any facts explaining how major life activities were limited, let alone, how they were "*substantially limited*, which she is required to do"); *Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, No. 19-835, 2019 WL 4060843, at *4 (E.D. Pa. Aug. 27, 2019) (plaintiff's complaint fails to show disability because there are no factual allegations describing how the alleged disability impacts daily life or otherwise substantially limits a major life activity). Although a plaintiff need not "go into particulars about the life activity affected by [his] alleged disability or detail the nature of [his] substantial limitations" at the pleading stage, [he] still must allege some facts to support an inference that [he] suffered from a disability within the meaning of the statute. *Fowler*, 578 F.3d at 213; *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint."). By listing his impairment without any facts about how it limits him, Stevens has not adequately alleged that he suffers from a disability.[10] To the contrary, Stevens avers that he was able to perform the duties of his position as General Manager "until he was prevented [from] doing so by Defendant," which suggests that Stevens may not have been substantially limited in any major life activities during the alleged period of discrimination from March 29, 2023 through April 14, 2023, when he was informed that his position of General Manager was no longer available. (AC at 2-3.)

---

[10] Further, although Stevens alleges that the Defendants failed to accommodate his disability by "modifying the work schedule to accommodate medical appointments, providing assistive technology or tools to aid in job performance, and allowing for periodic breaks for rest or medication" (*see* AC at 4), he does not actually allege that he requested any of these accommodations from his employer or describe the relevant circumstances of such a request.

B.  **ADA Retaliation Claim**[11]

Stevens alleges that "immediately" following his hospitalization, he contacted Miller "to inform him of the hospitalization and the need for medical leave." (AC at 3.) On April 3, 2023, Stevens allegedly followed up by providing a medical certification from his treating physician that documented his "qualifying medical condition and the necessary period of leave." (*Id.* at 2.) On April 14, 2023, Stevens was informed that his position as General Manager was no longer available, and he was offered the "lesser position" of Assistant Manager at a "significantly lower pay rate." (*Id.* at 2-3.) Stevens contends that he "engaged in protected activity by requesting FMLA leave."[12] (*Id.* at 4.) Defendants seek dismissal of Stevens's retaliation claim on the basis that he did not make a "good faith request for an accommodation." (*See* Motion at 12.)

The ADA anti-retaliation provision, 42 U.S.C. § 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." *Id.* This provision is similar to Title VII's prohibition of retaliation. *See* 42 U.S.C. § 2000e–3(a).

---

[11] Stevens also asserts a Title VII retaliation claim (*see* Response at 3), but there are no allegations in the AC that describe conduct prohibited by Title VII. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 134 (3d Cir. 2006) ("Title VII's anti-retaliation provisions protect employees who participate in Title VII's statutory processes or who otherwise oppose employment practices made illegal by Title VII."). Accordingly, the Court will dismiss any Title VII retaliation claims with prejudice.

[12] Stevens also contends that prior to his hospitalization, Miller "engaged in a pattern of retaliatory conduct," by reducing work hours, assigning undesirable job tasks, and withholding opportunities for advancement. Miller also allegedly made defamatory comments about Stevens's performance in front of his subordinates and isolated Stevens from team meetings and decision-making processes. (AC at 3.) However, any actions taken before any alleged protected activity cannot form the basis of a retaliation claim. *See Gerber v. Dauphin Cnty. Tech. Sch.*, No. 23-2039, 2024 WL 1520965, at *7 (M.D. Pa. Apr. 8, 2024).

Accordingly, courts analyze ADA retaliation claims under the same framework employed for retaliation claims arising under Title VII. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, . . . precedent interpreting any one of these statutes is equally relevant to interpretation of the others.") (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing cases)).

To state a retaliation claim, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation discovery will reveal evidence of the following elements: (1) he engaged in protected activity under the ADA; (2) the employer took adverse action against him; and (3) a causal link exists between the protected activity and the adverse employment action.[13] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Connelly*, 809 F.3d at 789; *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). "Protected activity" under the ADA "includes retaliation against an employee for requesting an accommodation." *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188-89 (3d Cir. 2010)). Furthermore, "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA." *See Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 318-19 (E.D. Pa. 2020) (citing *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156-57 (3d Cir. 2017)).

---

[13] "Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a 'qualified individual with a disability.' By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *See Gavurnik v. Vantage Labs, LLC*, No. 19-5537, 2020 WL 12729778, at *2 (E.D. Pa. June 26, 2020) (citing cases).

At this early stage of the litigation, the Court is satisfied that Stevens has plausibly stated a claim for ADA retaliation.  Construing the allegations in Stevens's favor, his request for medical and/or FMLA leave satisfies the "protected activity" element of his retaliation claim.[14]  Also, Stevens's demotion, which resulted in a significant salary deduction and change of title, constitutes an "adverse employment action."  *See Young v. St. James Mgmt., LLC*, 749 F. Supp. 2d 281, 291 n.10 (E.D. Pa. 2010) ("[D]emotions or significant compensation reductions can constitute adverse employment actions under Title VII.") (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999)).  Finally, as to causation, the Court concludes that the temporal proximity of the protected activity to the adverse employment action, a period of approximately fourteen days, "is sufficient to plausibly suggest a causal relationship, or, at a minimum, to support a reasonable expectation that discovery may reveal further evidence" to support Stevens's assertion that Wendy's decision to demote him was motivated by his request for medical leave.  *See, e.g., Dreibelbis*, 438 F. Supp. 3d at 314 (citing *Taylor v. JFC Staffing Assocs.*, 690 F. Supp. 2d 357, 371 (M.D. Pa. 2009) (finding twelve days between the protected activity and the adverse employment action sufficient to support a Title VII retaliation claim)); *see also Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 590, 598 (D.N.J. 2006) (finding temporal proximity of "a little more than a month" creates an inference of discrimination); *Dinger v. Bryn Mawr Tr. Co.*, No. 19-2324, 2022 WL 6746260, at *10 (E.D. Pa. Oct. 11, 2022) (finding temporal proximity of twenty-eight days is unusually suggestive); *compare LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503

---

[14]  Defendants contend that Stevens "did not have a good faith belief" that he was disabled when he requested medical leave. (Response at 12-13.)  The cases cited by Defendants in support of this assertion involve analysis at the summary judgment stage.  At this stage of the litigation, and drawing all inferences in favor of Stevens, it appears from the allegations in the AC that suffering a heart attack/stroke could have caused Stevens to reasonably believe that he was entitled to an accommodation of medical leave.

12

F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.").

    C.    **FMLA Claims**

At issue with Stevens's FMLA claims of interference and retaliation, which are predicated on the same conduct as his ADA claims, is whether Stevens was covered by the FMLA. Under the FMLA, an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for, *inter alia*, a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not interfere or retaliate against an employee for requesting or taking FMLA leave. *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter") and 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.").

To allege protection under the FMLA, Stevens must establish that he "was an eligible employee under the FMLA" and that he was "entitled to FMLA leave." *Capps v. Mondelez Glob.*, *LLC*, 847 F.3d 144, 155 (3d Cir. 2017); *see also* 29 U.S.C. § 2611 (describing who qualifies as an "eligible employee" under the FMLA). To be eligible for FMLA leave, an employee must have been employed "for at least 1,250 hours of service with [the] employer during the previous 12-month period." *See Head v. City of Philadelphia*, 627 F. Supp. 3d 444, 447 (E.D. Pa. 2022) (citing 29 U.S.C. § 2611(2)(A)). "At least one year must span the period between the date when the

employee was hired and when the medical leave begins." *Flannery v. Nextgen Healthcare Info. Sys., Inc.*, No. 05-6007, 2006 WL 2338408, at *2 (E.D. Pa. Aug. 10, 2006).

Stevens alleges that he began his employment at Wendy's on April 25, 2022, and his heart attack/stroke occurred on March 29, 2023, after which he "immediately" contacted his supervisor to advise of his "need for medical leave." (AC at 2.) Even on April 11, 2023, when Stevens communicated his intention to return to work, he still had not yet been employed for twelve months. (*Id.*) Therefore, the Court concludes that Stevens worked for less than twelve months as of the date his leave commenced. *See Flannery*, 2006 WL 2338408, at *3. Because Stevens was not protected by the FMLA when he requested leave and was demoted, his FMLA claims will be dismissed with prejudice.

### D.    Intentional Infliction of Emotional Distress Claim

Stevens asserts generally that the actions of Defendants were "extreme and outrageous" in that they reduced his work hours, assigned undesirable tasks, and made defamatory or derogatory comments. (AC at 5.) He claims that Defendants' conduct caused him severe emotional distress, manifesting in symptoms of anxiety, depression, and sleep disturbances. (*Id.*) Steven's intentional infliction of emotional distress claim, however, is barred by the exclusivity provision of the Pennsylvania Workers' Compensation Act ("PWCA").

The PWCA "provides the exclusive remedy for all employees' work-related injuries." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 400 (E.D. Pa. 2002) (citing 77 Pa. C.S.A. § 481(a)). Generally, the PWCA bars claims for intentional infliction of emotional distress arising out of an employment relationship. *Ahmed v. Lowe's Home Centers, Inc.*, 346 F. App'x 816, 821 (3d Cir. 2009) (citing *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997)); *see also Kumar v. UPMC Physician Servs.*, No. 04-1239, 2006 WL

1805691, at *13 (W.D. Pa. June 28, 2006) ("The court finds that plaintiff's claims for intentional infliction of emotional distress . . . arise out of her employment relationship with defendant and, thus, are barred by the exclusivity provision of the Pennsylvania Workers' Compensation Act.").

The PWCA recognizes a narrow "personal animus" or "third party attack" exception, which allows claims for "employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment." *See Ahmed*, 346 F. App'x at 821; *McInerney*, 244 F. Supp. 2d at 400. The "critical inquiry in determining the applicability of the third-party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship." *McInerney*, 244 F. Supp. 2d at 400. Claims against employers for intentional infliction of emotional distress claims "are excepted only where they are wholly, or nearly wholly, based on distinctly personal issues, often pre-dating the employment, and thus disconnected from the work situation." *Lamb v. Outback Steakhouse of Florida, Inc.*, No. 13-794, 2014 WL 12689882, at *13 (M.D. Fla. Sept. 4, 2014) (applying Pennsylvania law). The conduct alleged by Stevens – reducing his work hours, assigning undesirable tasks, and making derogatory comments – are all alleged to have been committed in connection with his employment, and are therefore barred by the PWCA. *See, e.g., Hettler v. Zany Brainy, Inc.,* No. 99-3879, 2000 WL 1468550, at *6 (E.D. Pa. Sept. 27, 2000) (exception did not apply where the defendant ordered the plaintiff, who had an injured back, to lift heavy boxes because the alleged acts taken against the plaintiff were "too closely connected to the work situation").

Even assuming the PWCA does not operate as a bar, Stevens's claim does not rise to the level required for a finding of intentional infliction of emotional distress. To do so, Stevens must

demonstrate that Defendants' conduct was of an "extreme or outrageous type." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Rinehimer v. Luzerne County Community College*, 539 A.2d 1298, 1305 (Pa Super. 1988)). "The conduct complained of must be so outrageous, and so extreme in degree, as to be regarded as 'atrocious' and 'utterly intolerable in a civilized community.'" *Demshick v. Delaware Valley Convalescent Homes, Inc.*, No. 05-2251, 2005 WL 1923604, at *2 (E.D. Pa. Aug. 9, 2005) (quoting *DeWyer v. Temple Univ.*, 2001 WL 115461, at *5 (E.D. Pa. Feb. 5, 2001)). The Third Circuit has noted that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox*, 861 F.2d at 395. Examples of sufficiently outrageous conduct include: hospital employees giving false reports so that the plaintiff was indicted for homicide; a defendant sexually harassing his employee and forbidding her from speaking with others, following her at work, and withholding necessary information from her; and a defendant hitting a child with his car and burying him on the side of the road only to be discovered by the child's parents months later. *Demshick*, 2005 WL 1923604, at *3 (citing *Clark v. Twp. of Falls*, 890 F.2d 611, 623-24 (3d Cir. 1989)). The allegations in Stevens's AC clearly do not rise to the requisite level of outrageousness to allow for recovery and will be dismissed with prejudice.

## V.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion in part and deny the Motion in part. The Motion is denied as to Stevens's claims for retaliation under the ADA. Stevens's remaining claims will be dismissed. His Title VII retaliation, FMLA, and intentional infliction of emotional distress claims will be dismissed with prejudice. His ADA discrimination claim will be dismissed without prejudice. Because it is unclear whether Stevens can cure the

defects in the dismissed ADA discrimination claim, the Court will give him a brief opportunity to file an amended complaint prior to moving forward with discovery. An order follows, which provides further instructions for proceeding.